ZENIA GILG, SBN 171922
KRISTEN W. JUDD, SBN 181804
DANNY B. SCHULTZ, SBN 196232
506 Broadway
San Francisco CA 94133
415/986-5591

Attorneys for Plaintiff
PEGGY BIMBO
IVY BIMBO
TAMMY NICHOLAS
TRACY ADAMS
SAMANTHA ADAMS
STEFANIE RISTIC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY BIMBO, IVY BIMBO, TAMMY NICHOLAS, TRACY ADAMS, SAMANTHA ADAMS, STEFANIE RISTIC, | No. |
| Plaintiffs, | VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |
| v. | |
| WILLIE BROWN, MAYOR OF THE CITY OF SAN FRANCISCO IN HIS OFFICIAL CAPACITY, THE CITY AND COUNTY OF SAN FRANCISCO, THE SAN FRANCISCO POLICE DEPARTMENT, AND DOES 1-40, | |
| Defendants. | |

1.   This action is brought against the City and County of San Francisco, Willie Brown, Mayor of the City and County of San Francisco in his official capacity, and the San Francisco Police Department, as well as the individual officers acting on the San Francisco Police Department's behalf.  These defendants have been accused by plaintiffs of implementing and threatening to enforce an ordinance (San Francisco Municipal Police Code Article 17.1),  which is designed to and will result in the

1

violation of plaintiffs' constitutional rights.

2.   This action is brought by a individual fortunetellers engaging in the constitutionally protected practice of fortune-telling on private property in San Francisco.  The term 'fortunetelling' as used herein (and as interpreted in the San Francisco ordinance in question) encompasses several types of speech and practices including forecasting futures or reading the past through means of psychic power, occult, phrenology, spirits, tea leaves, tarot cards, etc.  Plaintiffs seeks declaratory and injunctive relief as well as compensatory damages to recoup the costs of attorneys fees.

**JURISDICTIONAL STATEMENT**

3.   This action arises under the First Amendment of the United States Constitution,  Fed. R. Civ. P. 57 and Fed. R. Civ. P. 65.  Jurisdiction is conferred upon this court by Title 28 of the U.S.C. §§ 1331 and 1343.

**INTRADISTRICT ASSIGNMENT**

4.   The unlawful ordinance, as described in paragraphs 8 thru 24 inclusive, was enacted and will be enforced in the City and County of San Francisco, which is within the San Francisco Division of this Court as provided in Civil Local Rule 3-2(d).

**PARTIES**

5.   Plaintiffs

Peggy Bimbo, Ivy Bimbo, Tracy Adams, Samantha Adams, and Stefanie Ristic, and Tammy Nicholas are each residents of the State of California and were present during the before, during, and after enactment of the ordinance in question.  They are now and, at all times mentioned in this complaint, legally present

2

in California.  The Plaintiffs have each been fortunetellers in San Francisco who support themselves through their services of spiritual healing and of giving advice based upon their predictions of the future and readings of the past.  San Francisco is home to each of these plaintiffs.

6.  Each of the plaintiffs in the present case are also American Gypsies, or, of Rom Descent.  Each of the plaintiffs adhere to the ancient traditions, values, societal structure, and religious practices distinct to Gypsies which has been passed down over the generations.  Among these traditional Gypsy beliefs and practices, that each of the plaintiffs adhere to are: (1) the existence of *Del* (God); (2) the existence of *Beng* (Satan); (3) the existence of *bibaxt* (bad luck); (4) the existence of *mulo* (supernatural spirits, or ghosts); (5) the power of good luck charms, amulets, and talismans; (6) the power of curses; (7) the power of healing rituals; (8) the necessity of strict adherence to purity rules, which generally relate to hygiene and cleanliness, physical contact with Gypsy women, and Gypsies' association with non-Gypsy persons; (9) the existence of *marime*, which is the state of impurity, brought onto a person for violating a purity rule; (10) the need to expel a Gypsy person who violates a purity rule and who thus, is in the state of *marime*.

Each of the plaintiffs believe that many Gypsy women, and that they themselves have the true ability to practice *drabardi* (fortunetelling) and *drabarni* (natural healing).

Additionally, each of the plaintiffs adhere to the

traditional Roma belief that they must enforce a cultural and social separation from non-Roma societies in order to maintain strong family and Gypsy community ties.

     7.  <u>Defendants</u>

     a.  Defendant City and County of San Francisco is a municipal corporation, duly organized and existing under the laws of the State of California.

     b.  At all times mentioned, defendant San Francisco Police Department was a corporation, duly organized and existing under the laws of the State of California and acting through the Board of Supervisors.

     d.  Defendant Willie Brown is the mayor of the City and County of San Francisco.

## FACTUAL BACKGROUND

    8.  In July 2003, the San Francisco Board of Supervisors enacted Municipal Police Code ("MPC") Article 17.1, sections 1300 thru 1319.2, inclusive.  This ordinance regulates the speech and activities of fortunetellers in several respects.

    9.  On information and belief, this ordinance was brought to the San Francisco Board of Supervisors at the initiative of the San Francisco District Attorney's office and was drafted by representatives of that office as well as by representatives of the San Francisco Police Department ("SFPD"), Supervisor Aaron Peskin's Office, and by representatives of the City Attorneys office.  This new ordinance (MPC Article 17.1) actually repealed MPC section 162, which imposed a complete ban on fortunetelling. Apparently section 162 was not enforced.

    10. MPC Article 17.1, section 1300 states the government's

4

intent in enacting the legislation regulating fortunetelling.
Its purpose is to reduce fraud associated in the fortunetelling
industry and to provide law enforcement with additional tools to
more readily be able to identify perpetrators of fraud in order
to facilitate their prosecution.

On Information and belief, at the June 18, 2003 Board of
Supervisors Finance and Audit Committee Hearing, SFPD Fraud Unit
Inspectors Ovenessian and Feledy stated that according to SFPD
records, over the course of the past ten years, there have been
a mere fifty- six complaints made from consumers alleging
deceptive practices of a fortuneteller in San Francisco.  The
Inspectors also stated that over that same time period, there
have been two criminal prosecutions of fortunetellers for fraud
related crimes.  There were no statistics presented at the
hearing indicating the number of cases where a consumer
complaint was made alleging fraud committed by a fortuneteller
where the police were unable to identify the alleged perpetrator
with the investigative tools already available to them.  As the
practice of fortunetelling necessarily involves speech protected
by the First Amendment of the United States Constitution, with
this extraordinarily low number of consumer complaints, the
government of San Francisco has failed to establish a compelling
or important interest sufficient to justify burdening this
speech.

11.  Section 1301 makes it unlawful for any person to
advertise or to offer to engage in the activity of
fortunetelling for gain or benefit, without a permit.

12.  Section 1303 specifies exceptions to the permit

requirement.  A permit will not be required for persons enter-
taining the public by demonstrations of fortunetelling.  Also
exempt are persons engaged in the practice of fortunetelling as
part of a religious ceremony provided that the compensation
received is for the benefit of the church or association and not
an individual.

   13.  Section 1304 specifies the information the applicant
must provide to the government in the application in order to be
considered for a permit.  The information required is extensive.
The applicant must provide (a) their business name; (b) their
true name, date of birth, and government issued identification;
(c) a copy of a fictitious business name statement; (d) the
name/ names under which the permitee will be identifying
him/herself to the public; (e) the present or proposed business
address; (f) the applicant's gender, height, weight, hair and
eye color; (g) all addresses the applicant has resided within
the previous five years; (h) the applicant's employment history
for the previous five years; (i) the occupational permit history
of the applicant; (j) the address and dates when the applicant
previously practiced fortunetelling in or outside of San
Francisco; (k) all convictions within the past seven years
pertaining to theft, fraud, burglary, violence, or deceit; (l)
any other information requested by the Chief of Police to
ascertain the truth of the matters required on the application;
(m) a full set of fingerprints to be taken by the San Francisco
Police Department (SFPD); (n) photographs to be taken by the
SFPD; (o) application fee.

   The requirement that applicants submit a California

driver's license conflicts directly with plaintiffs fundamental Romani beliefs.  Plaintiffs, who are each Gypsy women, believe that they have the true 'fortunetelling' abilities.  Further, many of the plaintiffs do not possess a driver's license because they believe that when their picture is disseminated to the public, their fortunetelling ability will be diminished.  By requiring that all applicants for a fortunetelling permit to obtain a government issued phot I.D., the government is pre-cluding plaintiffs, members of a specific ethnic group, from being able to engage in this speech.

The requirement that fortunetelling permit applicants report past convictions for acts of violence is wholly unrelated to the government's stated purpose of this legislation which is to protect consumers against fraud.  Upon information and belief, there has been no suggestion by the government that violence is prevalent or problematic in the fortunetelling industry.

The requirement that the applicant must provide all information requested by the Chief of Police that is necessary to ascertain the truth of the matters specified in the appli-cation is an utterly ambiguous provision that leaves the SFPD with a wide range of discretion and no guidelines in determining what additional information they may require in order to accept the application.  Inherent in any permitting scheme which vests a wide range of discretion in the permitting agency, is the potential for tremendous abuse and discrimination.

The requirement that the permit applicant submit fingerprints and photographs that must be taken by the SFPD is

overly restrictive and will serve to prevent plaintiffs, for applying for a permit as it is violative of Gypsy purity rules for a Gypsy woman to come in physical contact with a non-Gyspsy person.

14.   Section 1305 of the ordinance establishes guidelines as to when a permit should be granted after the SFPD receives a fortuneteller permit application.  It specifies that a permit must be granted unless the applicant has suffered one felony or two misdemeanor convictions relating to theft, fraud, burglary, violence, or deceit within the seven years prior to the submission of the application.  Further, an application will be denied where the Chief of Police finds that the applicant previously had an occupational permit denied on the above-stated grounds within the seven years previous to the current application. Finally, the Chief of Police may deny a permit if he finds that the applicant failed to provide the SFPD with information required under this section.

The requirement that a fortunetelling permit be denied based upon the applicant's past convictions for acts of violence is wholly unrelated to the government's stated purpose of this legislation which is to protect consumers against fraud.  Upon information and belief, there has been no suggestion by the government that violence is prevalent or problematic in the fortunetelling industry.

At the June 18, 2003 Finance Committee meeting, Captain O'Neil from the SFPD Permit Department, stated that if a member of the public objects to the issuance of a fortunteller's permit, that it may be denied by the Chief of Police.  This

statement indicating the intent of the permitting agency is in direct conflict with the clear language of the ordinance and it vests the police department with unfettered discretion and no clear guidelines in determining to whom to grant a permit.

15. Section 1306 specifies when a permit may be suspended or revoked.  This includes when the Chief of Police, in his sole discretion, determines that an applicant has violated or has attempted to violate any law pertaining to fraud or theft or the use of violence.  A permit may also be revoked when the Chief of Police determines that the permit-holder made material misrepresentations on his/her permit application.  Once a permit has been revoked, the permit-holder may not reapply for one year.

This section provides that the Chief of Police may revoke a permit if he or she, in their sole discretion, determines that the permitee has committed fraud or has engaged in deceptive practices.  There is no requirement that the permitee be criminally convicted of such an offense or even that they be charged, or even that a complaint be filed by a client.  This section provides no guidelines to be guide the SFPD in determining whether a license would be revoked and, as such, leaves the SFPD with a wide range of discretion which conceivably could lead to arbitrary revocations.

16.  Section 1312 mandates that all fortunetellers issue a written receipt after each transaction containing identifying information of the permit-holder and indicating what services were provides and the price of the service.  Permit-holders are required to keep their receipts for five years.

Many Gypsies cannot read or write.  Thus, the requirement that they write receipts is an impossibility for these persons.  This provision of the ordinance will preclude them from being able to practice fortunetelling.

The requirement that receipts be kept for five years also does not serve the government's interest in helping law enforcement to more efficiently be able to prosecute fraudulent fortunetellers as the statute of limitations for felony fraud related crimes is three years.

17.  Sections 1313 pertains to identification cards that the permit-holder must post.  It mandates that each fortuneteller display an identification card bearing the permitee's photograph, thumbprint, name and permit number.

The requirement that the identification placard be posted with the permitee's phot is not necessary to achieve the government's interest of protecting consumers against fraud.  If a consumer complaint is made, the SFPD can easily track down the fortuneteller through a permit number, business address, and physical description.  Further, mandating that the posted badges include the fortuneteller's photographs and fingerprints will preclude many Gypsies, such as plaintiffs from being able to obtain a permit as plaintiffs believe that having a photograph publically displayed will diminish their fortunetelling abilities.

18.  Section 1314 mandates required rate schedule and complaint procedures.  Each permitee that tells fortunes from a roving location is required to provide a copy of rate information to each customer.  Further, this document must include a

10

statement that if the customer has a complaint about the service provided, that they may call the City and County of San Francisco at 415/551-9535. If the fortuneteller works from a fixed location, the same notice and rate schedule must be posted in a visible location.  It must be on paper at least 8 by 10 inches and must be printed in at least 14 pt. font.

The requirement that a rate sheet be posted and that no prices be charged other than those posted is overly burdensome on fortunetelling practitioners.  In the realm of fortunetelling and spiritual healing, the needs of the client are particularly individualized.  Indeed, there may be some types of services where the price is somewhat uniform, such as a palm reading. However, other types of readings and healing techniques are individually tailored.  It would be nearly impossible to post each of these possible services on a rate sheet. Further, the requirement that practitioners post a sign stating that if customers have a complaint they may call the government sends the clear message that the government expects the customer to have such complaints, that government believes that the practice of fortunetelling is fraught with fraud and that the government disproves of this type of communication.

19.  Section 1319 mandates that the permitee provide the SFPD with copies of all documents requested as required by this ordinance.

This section is overly burdensome on fortunetellers and does not establish clear guidelines that the SFPD must follow in order to inspect the records of a fortuneteller.  The potential for abuse under this section is tremendous as the SFPD might

11

repeatedly and without cause, request documents from one
fortuneteller or group of fortunetellers and not others.  And
again, this provision does not add to law enforcement's ability
to protect citizens against fraud.  For, if a complaint against
a particular fortuneteller is made, the police department can
subpoena these records or request a search warrant for the
premises.  Such a search warrant can issue and be executed in a
matter of hours after a complaint is made.

A better solution in this regulatory scheme would be to
adopt the provision in San Francisco Municipal Police Code
Article 9.6, the ordinance regulating solicitors of charitable
contributions.  Section 660.4-1 of this ordinance authorizes the
government to conduct annual audits of solicitors's required
documentation under the ordinance to ensure compliance thereto.
Every calender year, the controller of the City randomly selects
three organizations to audit.  The random nature of these audits
coupled with the fact that there are a fixed number of audits
each year takes away the unfettered discretion of law enforce-
ment to single out individual fortunetellers for repeated
inspections.  Further, this regulatory scheme would also help to
ensure that individual fortunetellers are abiding to the
dictates of the permitting requirements, irregardless of whether
they're accused of using deceptive practices.

20.  Section 1320 imposes criminal sanctions for non-
compliance with this ordinance.  A violation may either be
charged as a misdemeanor or as an infraction, with a maximum
jail sentence of six months.

As this ordinance was brought to the Board of Supervisors

at the initiation of the San Francisco District Attorney's office with the assistance of the SFPD, the government has manifested the clear intention to enforce the provisions thereof, including criminal prosecution of those who violate the ordinance.

21. To the extent that regulatory scheme of MPC Article 17.1 establishes a prior restraint on the protected speech of fortunetelling which amounts to a de facto prohibition against Gypsy fortuntellers from engaging in this speech in areas under the jurisdiction of the city of San Francisco, such provisions are clearly unconstitutional.

22. Additionally, in attempting to achieve its asserted purpose of protecting consumers against fraud and in providing law enforcement with additional tools to better assist them identify and prosecute perpetrators of fraud within the fortunetelling industry, the government has clearly failed in articulating a compelling or substantial need for such legislation.

23.  Further, in attempting to achieve its asserted purpose of protecting consumers against fraud and in providing law enforcement with additional tools to better assist them identify and prosecute perpetrators of fraud within the fortunetelling industry, the permit requirement is not so narrowly tailored as to avoid infringement on plaintiff's first amendment rights.

24. Plaintiffs, therefore, seek the following: (1) a judgment declaring the permit provisions of the city regulations unconstitutional; (2) an order permanently enjoining defendants

from enforcing such provisions as to prevent further irreparable injuries to the plaintiffs' constitutional rights, and (3) an order awarding them attorneys fees and costs.

## FIRST CAUSE OF ACTION

PEGGY BIMBO, IVY BIMBO, TAMMY NICHOLAS,
TRACY ADAMS, SAMANTHA ADAMS, STEFANIE RISTIC
v. WILLIE BROWN, MAYOR OF THE CITY OF SAN
FRANCISCO IN HIS OFFICIAL CAPACITY, THE CITY
AND COUNTY OF SAN FRANCISCO, AND THE SAN
FRANCISCO POLICE DEPARTMENT.

(First Amendment to the United States
Constitution, 42 U.S.C. section 1983)

25.  Plaintiffs realleges and incorporates herein by reference each and every allegation contained in paragraphs 1-24 of this complaint.

26.  San Francisco Municipal Police Code Article 17.1 sections 1300 thru 1319.2 inclusive, as enacted is a prior restraint on constitutionally protected speech under the First Amendment to the United States Constitution in that the ordinance effectively bars plaintiffs from engaging in the speech of fortunetelling without a permit.

27.  The free speech rights affected by MPC Article 17.1 are fundamental rights guaranteed by the First Amendment.

28.  The regulatory scheme encompassed in MPC Article 17.1 is not narrowly tailored to serve a significant or important government interest.

29.  Plaintiffs have engaged in the speech of fortune-telling in San Francisco for the purpose of conveying a religious, spiritual, and cultural message.  This message is intended for people in San Francisco, a city which has traditionally flourished in an multi-cultural and creative

14

environment.

30.  As a proximate result of defendants' conduct, plaintiffs will suffer severe damages as set forth herein.

WHEREFORE, plaintiffs pray for relief as set forth herein.

## SEECOND CAUSE OF ACTION

> PEGGY BIMBO, IVY BIMBO, TAMMY NICHOLAS,
> TRACY ADAMS, SAMANTHA ADAMS, STEFANIE RISTIC
> v. WILLIE BROWN, MAYOR OF THE CITY OF SAN
> FRANCISCO IN HIS OFFICIAL CAPACITY, THE CITY
> AND COUNTY OF SAN FRANCISCO, AND THE SAN
> FRANCISCO POLICE DEPARTMENT.
>
> (First and Fourteenth Amendments to the
> United States Constitution)

### Declaratory Judgment

31.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1-30 of this complaint.

32.  For all the above mentioned reasons, there exists an actual, substantial and immediate controversy within the Court's jurisdiction, which controversy is the result of defendants' conduct and which can be redressed by a judicial decision in favor of plaintiff.  Thus, the Court may properly declare the constitutional and civil rights of plaintiff in respect of this action.

33.  As a proximate result of defendants' conduct, plaintiffs have suffered severe damages as set forth herein.

WHEREFORE, plaintiffs pray for relief as set forth herein.

15

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs prays for relief as follows:

1.   Declaratory judgment that MPC Article 17.1 is facially unconstitutional under the United States Constitution.

2.   A permanent injunction enjoining defendants and their agencies, officers, employees, agents and all persons acting in concert with them from enforcing, by means of arrest, threats of arrest, issuance of summons, confiscation of materials, denial of permits, or any other means of enforcement of MPC Article 17.1 against plaintiffs for engaging in the speech of fortunetelling in San Francisco.

3.   Costs of the suit.

4.   For reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

5.   For such other further relief as the court may deem just.

Dated: October 31, 2003

Respectfully submitted,

_____
ZENIA K. GILG
KRISTEN W. JUDD
DANNY B. SCHULTZ
Attorneys for Plaintiffs
PEGGY BIMBO
IVY BIMBO
TAMMY NICHOLAS
TRACY ADAMS
SAMANTHA ADAMS
STEFANIE RISTIC